MALCOMSON v. WAPPOO MILLS et al.

Ex parte PEOPLE'S NAT. BANK.

(Circuit Court, D. South Carolina. February 1, 1900.)

**1. CORPORATIONS—RIGHTS OF THIRD PARTIES DEALING WITH OFFICERS—DIVERSION OF FUNDS.**

A bank which held the individual note of the president of a business corporation received a payment thereon by his direction from a debtor of the corporation. The president was sole manager of the corporation, and the owner of the greater part, if not all, of its stock, and treated its business and property as his own, without objection from any one. *Held*, that the bank was entitled to retain such payment without prejudice to its right to receive a dividend equally with other creditors, upon a claim it held against the corporation, from a receiver appointed to wind up its affairs in insolvency.

**2. SAME—INSOLVENCY—INTEREST ON CLAIMS.**

The receiver of an insolvent corporation, who has properly withheld payment of a dividend to a creditor until he could obtain the instructions of the court, is not personally liable for interest thereon; but, if he still has in his hands funds of the corporation, interest may properly be allowed and paid therefrom to place the creditor on an equality with others.

In Equity. On application of receiver for instructions.

James Simons, for receiver.
W. C. Miller, for petitioner.

SIMONTON, Circuit Judge. This case comes up on a report of the receiver asking instructions of the court. Among the claims presented against the receiver is that of the People's National Bank, as holder of the bonds of the Wappoo Mills, collateral security for a note of C. C. Pinckney, Jr., of $8,500. Under the order of distribution in this case a dividend of $2,572.98 is payable on these bonds so held by the People's National Bank. The receiver asks the instruction of the court under the circumstances hereafter stated. C. C. Pinckney, Jr., was indebted to the People's National Bank in two notes. One note was for $8,500, secured by bonds of the Wappoo Mills as collateral. The other note was for $1,500, secured by collaterals also, but of a different character. Mr. Pinckney was the manager and sole owner of the Wappoo Mills, a corporation. In July, 1897, the Wappoo Mills, through C. C. Pinckney, Jr., contracted to sell to the Etiwan Company, another corporation, 1,500 tons ground rock at a certain price. Mr. Sloan, the president of the Etiwan Company, says that when this contract was made the condition precedent was that 50 cents of the price of each ton of ground rock should be paid by the Etiwan Company towards the payment of the debt due by C. C. Pinckney, Jr., to the People's National Bank. Mr. Pinckney denies that this was a condition precedent to the contract of sale, but he says that he had promised to do this, and had assented to the payment. Some time afterwards, in a conference with the president of the People's National Bank as to the renewal of his $1,500 note, he referred to and confirmed the action of the Etiwan Company, in paying to the bank at the rate of 50 cents per ton on all ground rock delivered to the Etiwan

Company under this contract. The sum so paid was $545. This sum was applied by the bank to the $1,500 note. When the dividend was declared, application was made to the receiver for the dividend payable on the bonds of the Wappoo Mills held by the People's National Bank. The receiver had in his hands a claim against the Etiwan Company for ground rock delivered under the contract, —1,094 tons of the 1,500 tons. Having been informed that $545 of the purchase money had been paid to the People's National Bank, he did not feel himself authorized to pay the dividend to the bank until this $545 was paid to him, or in some way accounted for. This was his proper course. When the matter was explained to him, and he ascertained that money due to the Wappoo Mills was paid on a debt due by C. C. Pinckney, Jr., individually, the receiver did not feel that he had authority to pass upon the validity of this action, nor to decide upon the right of Mr. Pinckney to direct this diversion of a debt due to the Wappoo Mills. In this, too, he acted with propriety. On this he asks the instruction of the court. When he reported the matter, the special master was instructed to take and report testimony regarding it. The result of the testimony is stated above. Counsel have been heard, and their argument, with the testimony, has been considered.

There can be no doubt that either before the contract of sale was consummated, or during its progress, or, it may be, after it was made, Mr. Pinckney agreed that 50 cents on the price of each ton of ground rock delivered should be paid in reduction of his debt to the People's National Bank; that this payment was made by the Etiwan Company to the bank; and that Mr. Pinckney ratified, confirmed, and recognized it. The sole question is as to his right to do this. Mr. Pinckney was the sole manager of the Wappoo Mills; if not the only stockholder, the owner of the largest part of its stock. He managed its affairs as if they were his own, and it is impossible to extricate them from his personal affairs. He exercised, without objection from any one, the right to use the property and funds of the Wappoo Mills as his own. Under these circumstances the Etiwan Company and the bank had the right to deal with him on this footing. His direction as to the payment of the price of the rock bound the Wappoo Mills, and it is a good credit on the account due by the Etiwan Company to the Wappoo Mills. But the receiver would not have been safe in so treating it, except under the instructions of the court in this case. The bank appropriated the money received from the Etiwan Company to the $1,500 note, instead of the $8,500 note. In the absence of any direction upon this matter by its debtor, it had the right to make the appropriation, both notes having collaterals as security. The receiver will, therefore, pay to the People's National Bank the dividend to which it is entitled on the bonds of the Wappoo Mills held and presented by it, without deduction.

The counsel for the bank ask for interest on this dividend from the time when it was payable. Interest in cases of this kind is allowed by way of damages, or is the compensation paid for the use of the money detained, when such use has been or could have been

made. In the present case the receiver was right in seeking instructions of the court, and the delay which has occurred is incidental to all litigation. Thomas v. Car Co., 149 U. S. 116, 117, 13 Sup. Ct. 824, 37 L. Ed. 663. The receiver did not and could not have used the money; so he is not liable personally for any interest. But, if he has in his hands any funds still liable for the debts of the Wappoo Mills, the bank is entitled to interest on its claim from the time of its demand. In no other way could it be put upon a footing with other creditors who received their dividends. Armstrong v. Bank, 133 U. S. 433, 10 Sup. Ct. 450, 33 L. Ed. 747; People v. E. Remington & Sons, 126 N. Y. 679, 28 N. E. 249.